# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ELAINE WILKINSON, CAMERON YOUNG, MONICA YOUNG, LARELIE LUELLEN, and LISA DILL,** )<br>)<br>)<br>)<br>*Plaintiffs,* )<br>)<br>)<br>**v.** )<br>)<br>**OKLAHOMA HOUSING FINANCE AGENCY (OHFA), MICHAEL BUHL, in his official capacity as Chair of the OHFA Board of Trustees, SCOTT MCLAWS, in his official capacity as Secretary-Treasurer, DARIN DALBOM, in his official capacity as Member of the OHFA Board of Trustees, CLIFF MILLER, in his official capacity as Member of the OHFA Board of Trustees, JOI LOVE, in her official capacity as Resident Board Member of the OHFA Board of Trustees, DEBORAH JENKINS, in her official capacity as Executive Director of OHFA, and VALENTHIA DOOLIN, in her official capacity as Homeownership Director of OHFA,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>*Defendants.* ) | **Case No.: 5:24-cv-01229-PRW** |

## DEFENDANTS' MOTION TO DISMISS PURUSANT TO
## FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

Kristopher E. Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen,
    Orbison & Lewis, P.C.
502 West Sixth Street
Tulsa, OK  74119-1010
(918) 587-3161 phone
(918) 587-9708 fax

Melvin C. Hall, OBA #3728
Robert A. Nance, OBA #6581
Riggs, Abney, Neal, Turpen,
    Orbison & Lewis, P.C.
528 N.W. 12th Street
Oklahoma City, OK 73103-2407
405-843-9909 phone
405-842-2913 fax

ATTORNEYS FOR DEFENDANTS

## **TABLE OF CONTENTS**

I.   MOTION TO DISMISS STANDARD .......................................................................... 1

II.  PLAINTIFFS LACK ARTICLE III STANDING ....................................................... 3

III. APPLICABLE STATUTE OF LIMITATIONS .......................................................... 6

IV.  OVERVIEW OF THE HAF PROGRAM AND ITS REQUIREMENTS ................... 7

V.   OVERVIEW OF APPLICATION PROCESS ............................................................. 8

VI.  THE NAMED PLAINTIFFS' CLAIMS FAIL ......................................................... 12

   A.  Wilkinson failed to complete and submit her application. ..................................... 12

   B.  Cameron and Monica Young's claims are barred by the applicable statute of
       limitations and were not denied for any discriminatory reason. ............................ 14

   C.  Leuellen was denied for her failure to provide required information. ................... 16

   D.  Andrea Spears was denied because her mortgage was not delinquent. ................. 21

   E.  Mark Bull initiated but did not complete the application process, despite
       claiming he had never heard about the HAF program. ......................................... 23

   F.  Lisa Dill, Eric Humphrey, and Deborah Griffin lack standing because they
       did not apply for benefits under the HAF program .............................................. 24

VII. OHFA'S MARKETING OF THE HAF PROGRAM ............................................... 26

VIII. PLAINTIFFS' AMENDED COMPLAINT FAILS TO ESTABLISH A
      PLAUSIBLE CLAIM AND DEFENDANTS ARE ENTITLED TO DISMISSAL
      UNDER RULE 12(b)(6) ........................................................................................... 27

IX.  THE OFFICIAL CAPACITY CLAIMS ARE REDUNDANT AND
     UNNECESSARY ...................................................................................................... 28

X.   PLAINTIFFS' FAIL TO STATE A PLAUSIBLE RULE 23 CLAIM .................... 30

XI.  CONCLUSION ......................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Agne v. Papa John's Int'l, Inc.,*
*286 F.R.D. 559, 556 (W.D. Wash. 2012)* ............................................................ 31

*Albuquerque Indian Rights v. Lujan,*
289 U.S. App. D.C. 164, 930 F.2d 49, 56 (D.C. Cir. 1991)................................ 25

*Allen v. Wright,*
468 U.S. 737, 751, 755, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) ............. 4,5,25

*Allison v. Citgo Petroleum Corp.,*
151 F.3d 402, 416-417, 419 (5th Cir. 1998) ................................................. 33,35

*Ashcroft v. Iqbal,*
556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................... 2

*Baker v. Board of Regents,*
991 F.2d 628, 630 (10th Cir. 1993)..................................................................... 6

*Beck v. Maximus, Inc.,*
457 F.3d 291 (3rd Cir. 2006)............................................................................... 31

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 2

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
155 F.3d 3331 (4th Cir. 1998)............................................................................. 35

*Brown v. Sibley,*
650 F.2d 760, 770-71 (5th Cir. 1981) ............................................................... 25

*Cimino v. Raymark Industries, Inc.,*
151 F.3d 297 (5th Cir. 1998)............................................................................... 35

*Doe v. Douglas Cnty Sch.. Dist. RE-1,*
775 F. Supp. 1414, 1416 (D. Colo. 1991) ......................................................... 29

*Donelson v. United States,*
730 Fed. Appx. 597, 601, 602 (10th Cir. 2018) ................................................. 5

ii

*Downs v. Robinson Hoover and Fudge, PLLC,*
2024 U.S. Dist. LEXIS 177118, *13 (W.D. Okla. 2024)................................................... 32

*Espenscheid v. DirectSat USA, LLC,*
705 F.3d 770 (7th Cir. 2013) .......................................................................................... 35

*Griffin v. Dugger,*
823 F.2d 1476, 1483 (11th Cir. 1987) .............................................................................. 5

*Harrell v. Ckeckagain, LLC,*
248 F.R.D. 199 (S.D. Miss. 2006) ................................................................................. 30

*Hill v. Town of Valley Brook,*
595 F. Supp. 3d 1030, 1036 (W.D. Okla. 2022) ............................................................... 1

*Hockenburg v. Hanover Inc. Co.,*
2016 U.S. Dist. LEXIS 16159, *10 (W.D. Okla. 2016).................................................... *31*

*Madsen v. Boise State University,*
976 F.2d 1219 (9th Cir. 1992) ....................................................................................... 25

*Moose Lodge No. 107 v. Irvis,*
407 U.S. 163, 166-71 (1972)...................................................................................... 25,26

*Monell v. New York City Dept. of Soc. Servs.,*
436 U.S. 658 at 690 n.55 .............................................................................................. 28

*Nuziard v. Minority Bus. Dev. Agency,*
721 F. Supp. 3d 431, 468 (N.D. Tex., 2024).................................................................. 25

*Phillips v. Rodgers,*
2022 U.S. Dist. LEXIS 96969, *3; (W.D. Okla. 2022) ............................................... 2,27

*Pietrowski v. Town of Dibble,*
134 F.3d 1006, 1009 (10th Cir. 1998)............................................................................ 28

*Pueblo of Zuni v. United States,*
*243 F.R.D. 436, 493 (D.N.M. 2007)* ............................................................................. 31

*Riley v. Compucom Systems, Inc.,*
2000 U.S. Dist. LEXIS 4096, *13 (N.D. Tex 2000) ....................................................... 33

*Rolaff v. Farmers Ins. Co.*,
2020 U.S. Dist. LEXIS 161038, \*\*6-8; 2020 WL 4939172 (W.D. Okla. 2020) ............. 5,6

*Rozar v. Mullis*,
85 F.3d 556, 561 (11th Cir. 1996) ....................................................................................... 6

*Saramosing v. Corbett*,
2023 U.S. Dist. LEXIS 50324, \*3; 2023 WL 2636717 (W.D. Okla. 2023) ....................... 4

*Stewart v. City of Prairie Vill., Kan.*,
904 F. Supp. 2d 1143, 1161 (D. Kan. 2012) ..................................................................... 29

*Stout v. United States ex rel. United States Marshal's Serv.*,
2013 U.S. Dist. LEXIS 157517, at \*5-6 (W.D. Okla. 2013) ............................................ 29

*Thompson v. Jiffy Lube International, Inc.*,
250 F.R.D. 607, 623 (D.Kan. 2008) .................................................................................. 31

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
454 U.S. 464, 485, 102 S. Ct. 752, 765, 70 L. Ed. 2d 700, 718 (1982) ........................ 4,25

*Vondrak v. City of Las Cruces*,
2009 U.S. Dist. LEXIS 134519, at \*2 n.1 (D.N.M. 2009) ................................................ 29

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 2551 (2011) ............................................................................................ 35

*Wilson v. Glenwood Intermountain Props., Inc.*,
98 F.3d 590, 593-94 (10th Cir., 1996) .............................................................................. 32

*United States v. Hayes*,
515 U.S. 737, 742-745, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995) ................................ 4,5

## Rules

FRCvP 12(b)(1) ...................................................................................................................... 1

FRCvP 12(b)(6) ................................................................................................................. 1,27

FRCvP 12(f) ........................................................................................................................ 29

FRCvP 12(h)(3) ................................................................................................................... 29

FRCvP 23 ................................................................................................................. 30,33,34,

FRCvP 23(b)(2) ................................................................................................ 33

FRCvP 23(b)(3) ................................................................................................ 30

FRCvP 23(c)(2)(B) ........................................................................................... 34

LCvR 7.1 ............................................................................................................ 1

**Statutes**

42 U.S.C. §1983 ............................................................................................... 28

Okla. Stat. tit. 12, § 95(A)(3) ............................................................................ 6

Okla. Stat. tit. 60, § 176.1(A) .......................................................................... 27

Okla. Stat. tit. 60, § 176.1(A)(2) ..................................................................... 27

**Other**

2023 OK AG 13 ................................................................................................ 28

U.S. Const. amend. VII ................................................................................... 33

Okla. Const., Art. II, § 19 ............................................................................... 33

COME NOW Defendants, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and Local Civil Rule 7.1, and moves this Court for an Order dismissing, with prejudice, the claims asserted by Plaintiffs in their First Amended Complaint (Dkt. 28). The Defendants move to dismiss this action because no plaintiff states a plausible claim that they personally have been subjected to racial discrimination and so no plaintiff has personal standing necessary to support jurisdiction of this Court.  In addition, dismissal is appropriate pursuant to F.R.C.P 12(b)(6) because no plaintiff has stated a claim upon which relief can be granted.  Claims of some plaintiffs are also barred by the statute of limitations. In support of this Motion, OHFA respectfully presents the following:

## I. <u>MOTION TO DISMISS STANDARD</u>

Motions to dismiss brought pursuant Rule 12(b)(1) challenge whether the Court has jurisdiction over the action. *Hill v. Town of Valley Brook*, 595 F. Supp. 3d 1030, 1036 (W.D. Okla. 2022)(Wyrick, J.). These motions generally take one of two forms, "either 'a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction,' or 'a challenge to the actual facts upon which subject matter jurisdiction is based.'" *Id.* (internal citations omitted). When the challenge is a facial attack, the Court confines itself to review of the complaint and accepts all allegations as true (much like a Rule 12(b)(6) review). *Id.* When the challenge, however, is a factual attack, the Court must resolve the disputed facts and has wide discretion to allow affidavits, other documents, or a limited evidentiary hearing to do so. *Id.* (citations omitted).

Motions to dismiss brought pursuant to Rule 12(b)(6) challenge the legal sufficiency of a claim. *Hill*, 595 F. Supp. 3d at 1036. The Court must accept as true, and view in the

light most favorable to the plaintiff, all well-pleaded allegations in the complaint. *Phillips v. Rodgers*, 2022 U.S. Dist. LEXIS 96969, *3; (W.D. Okla. 2022) (Wyrick, J.). "Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted." *Id.* A plaintiff must plead sufficient facts to establish that the claim is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929).

In the instant case, Plaintiffs' Complaint should be dismissed with prejudice. They contend that the Oklahoma Homeowner Assistance Fund ("HAF") program administered by OHFA discriminates against Plaintiffs on the basis of race in violation of both Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. Despite filing an Amended Complaint consisting of over 260 paragraphs and 59 pages in length, Plaintiffs have failed to establish even the fundamental jurisdictional threshold of standing, because they do not claim that *any* Plaintiff has been plausibly discriminated against. Absent standing, this Court does not have jurisdiction. OHFA's challenge to Plaintiffs' Complaint is both facial and factual.

Notwithstanding the fact that Plaintiffs' fail to adequately plead standing, which is sufficient in itself to warrant dismissal, Plaintiffs, likewise, fail to plead facts to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 677. Both Counts asserted by

2

Plaintiffs, in conclusory fashion, combine their Title VI and Section 1983 claims against all Defendants collectively.[1] The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

The length of a pleading does not equal plausibility of any claim asserted therein. Plaintiffs have failed to establish standing. When the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). Even if Plaintiffs had met their burden to establish standing, their conclusory, collective, allegations do not state a claim for which relief can be granted. The defects in Plaintiffs pleading are of such character that they could not be cured by amendment, therefore dismissal with prejudice is warranted.

## II. **PLAINTIFFS LACK ARTICLE III STANDING**

As this Court has recognized:

The federal judiciary's power 'begins and ends with the need to adjudge the rights of an injured party who stands before' a court seeking redress for an injury that the court is capable of redressing. That is because Article III of the federal Constitution limits the federal judicial power to 'Cases' and 'Controversies' at 'Law and Equity.' 'For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue.' Rather, 'the plaintiff must have a 'personal stake' in the case – in other words, standing.' To establish standing, the plaintiff bears the burden to show '(i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief.' These three elements must be met 'for each claim' a plaintiff presses and 'for each form of relief that they seek.'

[1] Plaintiffs have sued OHFA, as well as each of OHFA's Trustees, the Executive Director of OHFA, the Deputy Executive Director of OHFA, and the Homeownership Director of OHFA all in their respective official capacities. Plaintiffs do not differentiate between OHFA and the individuals named in their official capacity and refer to all collectively as "OHFA" throughout the Amended Complaint.

> Standing is more than a technical, box checking requirement. It 'is a crucial component of the separation of powers between the co-equal branches of our government. It is what keeps our non-political branch out of the business of resolving policy disputes.'

*Saramosing v. Corbett*, 2023 U.S. Dist. LEXIS 50324, *3; 2023 WL 2636717 (W.D. Okla. 2023)(Wyrick, J.)(internal citations omitted). Standing has been described by the United States Supreme Court as an "irreducible constitutional minimum." *United States v. Hayes*, 515 U.S. 737, 742, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995). "The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 485, 102 S. Ct. 752, 765, 70 L. Ed. 2d 700, 718 (1982). Courts routinely refuse to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power. *Hayes*, 515 U.S. at 743. The rule against generalized grievances applies with as much force in the equal protection context as in any other. *Id.*

The burden rests with the party seeking the exercise of jurisdiction in his favor to "clearly [ ] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Hayes*, 515 U.S. at 743. Even if a governmental action is discriminating on the basis of race, the resulting injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." *Hayes*, 515 U.S. at 743-744 (quoting *Allen v. Wright*, 468 U.S. 737, 755, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)). Unless a plaintiff presents specific evidence tending to support that he has personally been subjected to a racial classification, that plaintiff would be

4

asserting only a generalized grievance against governmental conduct of which he does not approve. *Hayes*, 515 U.S. at 745, 115 S. Ct. 2431, 132 L. Ed. 2d 635; *Rolaff v. Farmers Ins. Co.*, 2020 U.S. Dist. LEXIS 161038, *6; 2020 WL 4939172 (W.D. Okla. 2020)(Jones, J.). "[Assertion] of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Allen*, 468 U.S. at 755, 104 S. Ct. 3315, 82 L. Ed. 2d 556.

Standing applies equally to named plaintiffs in class actions. *Donelson v. United States*, 730 Fed. Appx. 597, 601 (10th Cir. 2018). It cannot be disputed that a plaintiff must demonstrate standing for each claim he seeks to press. *Id.* These two rules, taken together, require that a named plaintiff possess standing as to each individual claim asserted in a complaint. *Id.* (citing *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (holding that "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim"). A litigant cannot by virtue of his standing to challenge one government action, challenge other governmental actions that did not injure him. *Donelson*, 730 Fed. Appx. at 602. "Standing is not dispensed in gross, a proposition no less true with respect to class actions than with respect to other suits." *Id*, at 602 (citations omitted).

Moreover, when a representative plaintiff sues multiple defendants on behalf of a class, that representative must still personally have standing to pursue each claim. *Rolaff*, 2020 U.S. Dist. LEXIS 161038 at *6. A claim asserted under one legal theory against multiple defendants is not treated by the courts as one "claim." *Rolaff*, at **7-8. Judge

Jones, writing for the United States District Court in the Western District of Oklahoma in the *Rolaff* case stated, in such an instance, "[t]hey are multiple claims with a common legal theory. Any other approach is nonsensical." *Id.* at *8.

## III. <u>APPLICABLE STATUTE OF LIMITATIONS</u>

Plaintiffs' First Amended Complaint omits critical details surrounding their claims. For example, Plaintiffs, who allege they applied, do not plead "when" they were each allegedly discriminated against on the basis of race. Presumably, the First Amended Complaint is silent in this regard in an effort to circumvent the applicable statute of limitations. As shown herein, claims asserted by three of the named Plaintiffs' are barred, not only due to lack of standing, but also as brought outside of the statute of limitations.

Because no federal statute of limitations is expressly provided for civil rights claims brought under Title VI or Section 1983, Congress has directed the courts to look to state law for the answer. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir. 1993). "The first step in selecting the applicable state statute of limitations is to characterize the essential nature of the federal action." *Id.* The Tenth Circuit has determined that Title VI or Section 1983 actions are best characterized as personal injury actions. *Id.* at 630-631; *See also, Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) (finding that the two-year personal injury limitations period applies to both Title VI and Section 1983 claims).

In Oklahoma, personal injury actions must be brought within two (2) years. Okla. Stat. tit. 12, § 95(A)(3) ("Within two (2) years: . . . an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; . . ."). As shown herein, from an examination, of "when" the named Plaintiffs applied for assistance, the claims of

6

Cameron Young, Monica Young, and Mark Bull are precluded by Oklahoma's two-year statute of limitations and must be dismissed.

## IV. OVERVIEW OF THE HAF PROGRAM AND ITS REQUIREMENTS

In the American Rescue Act of 2021 ("ARPA") Congress took certain measures as a result of the COVID pandemic in order to assist Americans who were in danger of losing their homes due to COVID-related mortgage foreclosure or similar financial difficulties and established the Homeowner Assistance Fund. *See* Amended Complaint [Dkt 28], ¶ 40. At least 60% of the funds allocated under ARPA subsections (d) and (f) (the total) had to be used to help Oklahoma homeowners whose income was less than the larger of 100% of the area medium income (AMI) for households of their size or 100% of the median income of the United States as determined by the HUD Secretary. *See* Amended Complaint [Dkt 28], ¶44; Exhibit 1, Declaration of Valenthia Doolin, ¶5. The Plaintiffs' have failed to plead specifics as to their household income and that their particular income exceeded 100% of the AMI for their county of residence, and failed to plausibly demonstrate how the socially disadvantaged indicators impacted their applications or lack thereof. All individuals with incomes less than 100% of AMI are eligible for HAF benefits regardless of whether socially disadvantaged indicators apply.

While Congress required some of the help be directed to individuals who identified based on the socially disadvantaged indicators, it did not define the term "socially disadvantaged." The Department of the Treasury, which administers the HAF program, uses the following definition:

7

**Socially disadvantaged** individuals are those whose ability to purchase or own a home has been impaired due to diminished access to credit on reasonable terms as compared to others in comparable economic circumstances, based on disparities in homeownership rates in the HAF participant's jurisdiction as documented by the U.S. Census. The impairment must stem from circumstances beyond their control. Indicators of impairment under this definition may include being a (1) member of a group that has been subjected to racial or ethnic prejudice or cultural bias within American society; (2) resident of a majority-minority Census tract; (3) individual with limited English proficiency; (4) resident of a U.S. territory, Indian reservation, or Hawaiian Home Land; or (5) individual who lives in a persistent-poverty county, meaning any county that has had 20% or more of its population living in poverty over the past 30 years as measured by the three most recent decennial censuses. In addition, an individual may be determined to be a socially disadvantaged individual in accordance with a process developed by a HAF participant for determining whether a homeowner is a socially disadvantaged individual in accordance with applicable law, which may reasonably rely on self-attestations.

*See* Amended Complaint [Dkt 28], ¶49, p. 15.  OHFA essentially adopted Treasury's "socially disadvantaged" indicators (1)-(5) above in its Treasury-approved HAF program. *See* Exhibit 1, ¶14.

## V. <u>OVERVIEW OF APPLICATION PROCESS</u>

Defendants provide this overview to illustrate that many of the Plaintiffs who allege they applied and were denied, instead failed to complete their applications and thus received no benefits as a direct result of their own failures rather than any purported racial animus.  The HAF program application process in Oklahoma, was primarily handled through a secure online portal which was available on OHFA's website at https://www.ohfa.org/haf/.  *See* Exhibit 1, ¶17.  Prior to closing the application portal on March 20, 2024, a prospective applicant would click a link to initiate the application process, which required the individual to enter specific information and set up a login with their email and a password.  *See* Exhibit 1, ¶22-26.  Presently, a Google search based on

the following "mortgage assistance Oklahoma" the first result that would populate was the OHFA Homeowner Assistance Fund URL. *See* Exhibit 1, ¶ 21.

The initial step for an applicant was to click on a link that indicated "Sign up now" on the OHFA website. *See* Exhibit 1, ¶ 24. After clicking on this tab, the applicant completed the User Details section, entering their email address, to which a verification code was delivered. Upon entering the verification code, the applicant sets up a password which was associated with their email and name. *See* Exhibit 1, ¶s 24-26. The applicant was then required to agree and acknowledge the terms of an End User License Agreement and a Privacy Policy to proceed. *See* Exhibit 1¶ 27. After completing these preliminary steps, the applicant was able to click a tab to start the application process. *See* Exhibit 1, ¶ 28.

The first step in the application process was to again provide a name for the application. *See* Exhibit 1, ¶29. During the process of starting the application and setting up the password, the software assigned a "Case ID" to an applicant which was a unique number for that applicant affiliated with their email and later their social security number. *See* Exhibit 1, ¶ 31. Based on the Case ID and login information, OHFA is able to track the activity of an applicant through an audit log, that is not accessible to the applicant, yet it tracks each time the applicant accesses and updates its application or completes steps in the application process. *See* Exhibit 1, ¶ 32.

Once the applicant clicks the Start Application tab, they arrive at the Application dashboard which is a split screen with the list of application steps on the left and content for each step on the right of the webpage. *See* Exhibit 1, ¶ 32. The initial content is a

9

required tab that the applicant must click to continue to the application itself, and upon clicking Continue, the application section "Program Overview" populates for the applicant to review. *See* Exhibit 1, ¶ s32-33. The overview is approximately 3 pages long and contains OHFA contact information (mailing address, phone number, email address for the program (hafapps@ohfa.org), the website URL, details the purpose of the HAF program, the eligibility criteria, information about socially disadvantaged, COVID-19 Qualified Financial Hardship qualification criteria, a description of eligible expenses, and information about receiving assistance from a housing counselor. *See* Exhibit 1, ¶s 34-35, 39; Exhibit 2, Wilkinson Program Overview – Case ID 41158. At the bottom of the Program Overview page, there are two tabs that an applicant may click, one is "Save" and the other is "Complete & Continue". *See* Exhibit 1, ¶ 36. The audit log will reflect if the applicant simply saved the step or completed the step. *See* Exhibit 1, ¶s 37-38. If a step in the application is not completed, including the Program Overview step, the application cannot be submitted and would not be reviewed. *See* Exhibit 1, ¶s 32, 38, 50, and 52.

The applicant then proceeds through steps A-K of the application. *See* Exhibit 1, ¶s 32 and 40. Step A is a series of questions that the applicant answers which track some preliminary eligibility requirements. *See* Exhibit 1, ¶s 42-49. If an applicant's response demonstrate ineligibility, a message appears which advises the applicant that they are not eligible; however, the applicant can still click the complete and continue tab and later upon completing the other steps submit the application for review. *See* Exhibit 1, ¶ s43-44, 49. The ineligibility notice is to advise of the eligibility issue. *See* Exhibit 1, ¶ 43. There are questions in section A of the application about socially disadvantaged indicators, question

A.5, yet the answer to A.5 did not qualify or disqualify an applicant. *See* Exhibit 1, ¶s 46-47.    Socially disadvantaged indicators allowed a person to have higher income limits to qualify, 150% of AMI versus 100% of AMI. *See* Exhibit 1, ¶ 6.    If an applicant self-identified as socially disadvantaged in the application, the applicant then identified which of the six categories applied to their status, which could include more than one category. *See* Exhibit 1, ¶ 47.

Following question A.5, regardless of having selected a socially disadvantaged indicator or not, applicants answered questions about income limit, which included a drop-down selection tab to select the applicant's county of residence. *See* Exhibit 1, ¶ 48.    Upon selecting that county, the household income limits would populate in the application displaying varying household sizes, so that the applicant could see if they were below the income limits for eligibility. *See* Exhibit 1, ¶ 48.    An applicant who was not socially disadvantaged and had an income of less than 150% AMI was allowed to proceed, so that their eligibility could be reviewed. *See* Exhibit 1, ¶s 48-50.

After completing each step in the application process and clicking the Complete & Continue tab at the end of each step, the applicant was ultimately able to verify the application. *See* Exhibit 1, ¶ 50.    The dashboard displayed the "Submit" page, which required that the applicant verify the information provide, electronically sign the document and then to submit, the applicant clicked the "Complete & Submit" tab. *See* Exhibit 1, ¶ 50-51.    The applicant then received a message on the dashboard that the "application is currently under review" and shortly thereafter a confirming email went out to the applicant. *See* Exhibit 1, ¶ 51.    Of the nine Plaintiffs only four of the Plaintiffs can assert that they

11

completed and submitted applications.  Of these four Plaintiffs, there were a total of three submitted applications (the Youngs submitted a joint application).  *See* Exhibit 1, ¶ 53.

## VI.  THE NAMED PLAINTIFFS' CLAIMS FAIL

It is readily apparent from the jurisdictional facts below that *none* of the Plaintiffs have standing to bring the claims asserted or such claims are otherwise barred. Additionally, Plaintiffs have not attempted to meet their standing burden relative to each separate Defendant and each separate cause of action as they must.  Each Plaintiff must show: (i) that he/she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendants; and, (iii) that the injury would likely be redressed by the relief requested.  Further, the facts as asserted by the Plaintiffs are not sufficient to demonstrate they met all required eligibility requirements, and rely on assumptions that some discriminatory conduct existed.

### A.  Wilkinson failed to complete and submit her application.

Wilkinson did not complete and submit her application to OHFA for assistance and consequently was not denied, because she never submitted her application. On January 10, 2023, Wilkinson initiated the preliminary steps for HAF assistance, meaning she went to the HAF website, set up an account, entered her email address, received a verification code, entered the verification code, set up a password and entered her name, agreed to the Policy Documents, clicked the "Start Application" tab, again entered her name, and arrived at the Application dashboard.  *See* Exhibit 1, ¶s 23-39.  According to the Case Audit Log, Wilkinson's case was created at 11:31 AM and was assigned Case ID number 41158.  *See* Exhibit 3, Wilkinson Audit Log – Case ID 41158.  A few minutes later at 11:35AM, she

12

saved the "Program Overview" step in the application process. *See* Exhibit, 2, Exhibit 3, Exhibit 1, ¶s39, 102-104. This was the last activity by Wilkinson, more than two years ago.

Because Wilkinson took no steps beyond the saving of the Program Overview, she did not complete or submit her application process. Notably, she never completed the Program Overview step of the application, let alone the remaining steps of the application A through K. As such, she fails on the first required standing element. She cannot show that she suffered an injury in fact that is concrete, particularized, actual, or imminent. Because she cannot satisfy the first element, there is no need to analyze the second and third elements. Wilkinson has not established standing as to any claim against any Defendant.

Wilkinson's allegation that she "applied for financial assistance through OHFA's Oklahoma Homeowner Assistance Fund program while the program was still accepting applications" is simply false. *See* Amended Complaint, ¶89. Likewise, Wilkinson's allegation that she "applied for relief under the program, but OHFA denied her application" is false. *See* Amended Complaint, ¶91. Contrary to the other false allegations in the Amended Complaint, OHFA never had an opportunity to evaluate the ability of Wilkinson to qualify for HAF program assistance, because she neglected to complete and submit her application, and consequently she had no completed application to grant or deny. She was unable to obtain assistance due to her own neglect. Further, there is nothing to support Wilkinson's allegations that a denial was based on a "race-based criteria" or that she was

13

the subject of discrimination "based on race" as there was never such an application to give rise to such purported conduct.

**B. Cameron and Monica Young's claims are barred by the applicable statute of limitations and were not denied for any discriminatory reason.**

The Youngs initiated their application on January 11, 2022, when they created their case and were assigned a Case ID. *See*, Exhibit 11, Young Audit Log – Case ID 30608. On January 13, 2022, the Youngs completed the Program Overview and proceeded with the application process, which included filling out the application online and uploading supporting documentation. The Youngs completed and submitted their application online on January 13, 2022. *See* Exhibit 11, p.4. Later that same day, the case was assigned to a case Specialist. The Specialist reviewed the application, going through a checklist to verify the application was complete, that all required documents were submitted, and that all required documents were properly filled out. *See* Exhibit 11, p. 3-4; Exhibit 10, Young Checklist; Exhibit 1, ¶ 60. The Specialist communicated with the Youngs in order to assist them with the application process and advised that the application was incomplete. *See* Exhibit 11, p. 3; Exhibit 1, ¶ 62-63.    The Youngs were advised as to what information was lacking, specifically that the Third-Party Authorization Form[2] (which is a required

---

[2] The Third-Party Authorization Form is a document that each applicant must complete accurately and is a required part of the application. The purpose of the Form is to authorize the mortgage lender/servicer to communicate and provide information to OHFA in relation to the application, including the delinquent status of the loan. An applicant was required to provide the name of their first mortgage lender/servicer, account/loan number for the mortgage, and property address. Each homeowner was required to print their name, sign, and date the Form. *See* Exhibit 1, ¶ 67.

14

form that must be fully completed) lacked the mortgage servicer's name and the Young's account number. *See* Exhibit 12 Youngs' Incomplete Authorization Form; Exhibit 1, ¶s 63, 65. The Youngs uploaded the completed document during the evening hours of January 13, 2022 at 6:09 pm. *See* Exhibit 11, p 2; Exhibit 1, ¶ 68. The resubmitted and completed form identified the Mortgage Servicer as "Flagstar" and provided the account number. *See* Exhibit 13. The Specialist resumed the review of the Youngs' application on January 20, 2022. *See* Exhibit 11, p. 2; Exhibit 1, ¶ 69.

On January 24, 2022 two business days after the Specialist resumed the review of the Youngs' application, the Specialist contacted Monica Young by telephone advising her that the delinquent mortgage balance in the application was over the maximum amount of assistance available to an applicant. *See* Exhibit 11, p.2; Exhibit 1, ¶s 69-72. The delinquent amount of the Youngs' mortgage in January of 2022 was $39,426.80. *See* Exhibit 14, Young Mortgage Statement; and Exhibit 1, ¶ 69. The Specialist inquired of Mrs. Young how they intended to address the $19,426.80 amount that was in excess of the available $20,000 in assistance. *See* Exhibit 11, p. 2; Exhibit 1, ¶ 72. Mrs. Young advised that they had agreed to a payment deferral with Flagstar applying the past due amounts to the end of the loan, and the Youngs were no longer delinquent. *See* Exhibit 11, p. 2; Exhibit 1, ¶ 73. The Youngs' application was denied because they did not meet required program criteria of mortgage delinquency. *See* Exhibit 11, p. 1-2; Exhibit 1, ¶ 74.

The Youngs were advised of their denial on January 24, 2022. *See* Exhibit 11, p. 1; Exhibit 1, ¶ 74. The Youngs were also advised of their right to appeal the denial on January 24, 2022, which included information on how to appeal. *See* Exhibit 11, p. 1; Exhibit 1, ¶

15

74. The Youngs never appealed the denial. *See* Exhibit 1, ¶ 74.     Because the Youngs failed to appeal and bring their claim against Defendants within two years of the date of their denial, their claims are barred by the statute of limitations. (See Section III. above).

The information in the Youngs' application did not self-identify them as socially disadvantaged, and in fact the Youngs identified themselves as "white" in their application. *See* Exhibit 6, p. 11.   Despite not self-identifying as socially disadvantaged and despite self-identifying their race as white, their application was reviewed quickly and in the order it was submitted without regard for socially disadvantaged status. *See* Exhibit 11, p. 4-5; Exhibit 1, ¶ 60-74.   The only priority criteria utilized by OHFA in the processing of claims was to prioritize such applications where the person was at risk for losing their homes. *See* Exhibit 1, ¶ 16.   The Youngs' application was quickly reviewed (within eleven (11) days from its initial submission). The Youngs' income was below the 100% AMI requirement, as it was determined to be 66.98% of AMI based on their household size and location. *See* Exhibit 6, p. 14; Exhibit 1, ¶ 60-74.

Plaintiffs assert that "OHFA specifically informed socially disadvantaged individuals about the program and assisted those individuals through the application process but **did *not* do so the same for white**, Asian, or Pacific Islander homeowners." [emphasis supplied] (*See* Amended Complaint ¶ 71).   Contrary to Plaintiffs' allegations, they received assistance with the application process just like other applicants, regardless of race or socially disadvantaged status.

**C. Leuellen was denied for her failure to provide required information.**

16

Leuellen first accessed and created her Case on February 19, 2022.  *See* Exhibit 15, Audit Log – Case ID 32085, p. 26; Exhibit 1, ¶ 75.  That same day she reviewed the program overview, began the application process, and saved portions of her application through Step F.  Exhibit 15, p. 25-26.  She did not log back on to proceed with her application until March 23, 2022, when she updated and saved Step F.  Exhibit 15, p. 25.  Two months later, she again logged into the system, updated and saved Step F, uploaded a mortgage file, and saved through Step I.  Exhibit 15, p. 24-25.  Nearly eight months later, on January 31, 2023 she again logged in and uploaded and deleted various files and submitted her application at 10:48pm, just 19 days short of one-year from when she commenced the process. *See* Exhibit 15, p. 24; Exhibit 1, ¶75.

OHFA began the review process the following day, February 1, 2023.  On February 2, 2023, the Specialist assisted Leuellen with the application process by communicating with Leuellen about her incomplete application, emailing Leuellen that the following information was needed: "Proof of Income Documentation (60 days of paystubs for Donald) - Social security card or W9 for Donald - Third-Party Authorization Form uploaded (Needs to include mortgage info) - Most Recent Mortgage Statement."[3]  *See* Exhibit 15, p. 23; Exhibit 1, ¶ 77.  Leuellen was also advised in this email that she had 14 business days to update this information. *See* Exhibit 15, p. 23; Exhibit 1, ¶ 79.  Later that

---

[3] Donald is identified in Leuellen's application as Donald Cameron Jones and was designated as her "spouse or partner".  *See* Exhibit 7, p. 8, Leuellen's First Application; Exhibit 1, ¶ 78.  Leuellen represented in her application that there was not a co-applicant, meaning someone on the mortgage or having an ownership interest in the residence.  *See* Exhibit 1, ¶ 78.

day, Leuellen began uploading some of the requested and missing information.  *See* Exhibit 15, p. 22; Exhibit 1, ¶ 79.

Leuellen represented in her application that she heard about the HAF program through a "community organization."  *See* Exhibit 7, p. 7.  In the Amended Complaint she identifies herself as "white," which is different than the representation made in her application, where she identified her race as "Other Multi-Racial" and Donald's race as "American Indian or Alaska Native."  *See* Exhibit 7, p. 8.

In response to a question in the application as to whether she could "afford [her] monthly mortgage payment after receiving HAF assistance," Leuellen responded "no".  *See* Exhibit 7, p. 18; Exhibit 1, ¶ 80.  Leuellen was required to be referred for HUD counseling.[4] *See* Exhibit 1, ¶ 81.  An email was sent to Leuellen regarding this requirement on February 17, 2023, informing her that she had 14 days to identify the HUD agency from whom she wished counseling, contact that agency for an appointment, complete the confirmation form, complete the counseling, and provide the counseling status report.  *See* Exhibit 7, p. 21; Exhibit 1, ¶ 82.  On March 9, 2023, Leuellen contacted OHFA seeking additional time to complete the HUD counseling.  *See* Exhibit 7, p. 20; Exhibit 1, ¶ 82.  Additional time was afforded Leuellen by OHFA.  *See* Exhibit 7, p. 20; Exhibit 1, ¶ 82.  On March 21, 2023, Leuellen again sought additional time because the HUD counseling was not

---

[4] When an applicant stated that if they received HAF assistance they could not afford their subsequent mortgage payments, OHFA required that the individual be referred for HUD counseling.  The purpose of this was to educate the person as to whether or not they could indeed afford their mortgage payment, because the program purpose of avoiding displacement from the applicant's home was not fulfilled if OHFA paid money to the mortgage servicer and then the person still lost their home.  *See* Exhibit 1, ¶ 81.

scheduled until April 11, 2023, which OHFA allowed. *See* Exhibit 7, p. 19; Exhibit 1, ¶ 82. The HUD counseling documentation was not provided in April of 2023 and Leuellen's application was denied. *See* Exhibit 7, p. 18; Exhibit 1, ¶ 82. On June 28, 2023, Leuellen's HUD counseling report documentation was uploaded, two and half months past the deadline. *See* Exhibit 7, p. 18; Exhibit 1, ¶ 82.

On October 24, 2023, Leuellen contacted OHFA, inquiring on the status of her application, which she claimed had been approved, which was not true. *See* Exhibit 7, p. 18; Exhibit 1, ¶ 83. Leuellen was again advised that her application had been denied. *See* Exhibit 7, p. 17; Exhibit 1, ¶ 83. Leuellen claimed she no longer had that email address. This communication from April 11, 2023 was again sent to Leuellen at the email address on October 25, 2023. *See* Exhibit 7, p. 17; Exhibit 1, ¶ 83. The following day, October 26, Leuellen uploaded several documents and an appeal of her denial. *See* Exhibit 7, p. 17; Exhibit 1, ¶ 83. Thereafter, she has continued to communicate with OHFA using the same email address she claimed she no longer had. In an effort to provide assistance to Leuellen, OHFA granted her appeal, despite the fact that she had not submitted all required documentation, and required that she provide the required and missing documentation in order to proceed with her application. *See* Exhibit 1, ¶ 83.

In March of 2024, Leuellen had not provided the appropriate third-party documentation and the employment verification for Donald. *See* Exhibit 1, ¶ 84. In April of 2024, OHFA requested additional information because of Donald's new employment. *See* Exhibit 7, p. 9; Exhibit 1, ¶ 84. OHFA, having learned from Leuellen that her home was now in foreclosure, advised Leuellen on April 5, 2024 that her application would be

19

"expedited" consistent with programs intent, which was to keep people in their homes. *See* Exhibit 7, p. 8; Exhibit 1, ¶ 84.   OHFA worked with Leuellen's lender to obtain a reinstatement quote of $36,969.48, which was provided in July of 2024. *See* Exhibit 7, p. 5; Exhibit 1, ¶ 84.  The amount then available for such assistance was $35,000, so OHFA inquired of Leuellen whether she could pay the $1,969.48, the amount above the cap. Leuellen was required to pay her portion for reinstatement. *See* Exhibit 7, p. 5; Exhibit 1, ¶ 84.   OHFA continued its attempts to communicate with Leuellen in August of 2024 to facilitate reinstatement to no avail as no response was received from Leuellen to the efforts. *See* Exhibit 7, p. 3; Exhibit 1, ¶ 84.

Leuellen started a new application in February of 2024, having created a case on February 13, 2024, completing it through Step J, using the same email address. *See* Exhibit 8, p. Leuellen's Second Application; Exhibit 21, Leuellen's Second Audit Log – Case ID 51147; Exhibit 1, ¶ 85.  OHFA was able to link the two applications filed by Leuellen by her email address and social security number. *See* Exhibit 7, p. 16; Exhibit 21, p. 1; Exhibit 1, ¶ 85.   On her initial application, Leuellen represented that she was socially disadvantaged, because her home in Tulsa was "a persistent poverty county." *See* Exhibit 7, p. 4; Exhibit 1, ¶ 87.   Tulsa is not a persistent poverty county, so this was disregarded, and irrelevant because her income was 23.35% of the AMI threshold for Tulsa County. *See* Exhibit 1, ¶ 87.   In her second application, she represented again that she was socially disadvantaged, living in a "minority majority community" and that she was "a first-generation homeowner." *See* Exhibit 7, p. 4-5; Exhibit 1, ¶ 87.

Leuellen was denied benefits due to her failure to comply with the program eligibility requirements, specifically providing necessary information required for the application process. *See* Exhibit 1, ¶ 88.    Leuellen's household AMI as reported on her first application was 23.35% of the 100% AMI threshold for Tulsa County where she resided. *See* Exhibit 7, p. 9-10; Exhibit 1, ¶ 89. Socially disadvantaged status had no impact on Leuellen's ability to obtain benefits.

**D. Andrea Spears was denied because her mortgage was not delinquent.**

Spears submitted her application to OHFA on October 19, 2023[5]. *See* Exhibit 16, Spears Audit Log – Case ID 48719. At the time of her application, her mortgage payment, which was due on October 1, 2023 (submitted to OHFA on October 19, 2023) and the basis of her request for assistance, was not 30 days delinquent. *See* Exhibit 17, Spears' Mortgage Statement; Exhibit 1, ¶ 94. The Spears' Mortgage Statement does not demonstrate that the Mortgage is delinquent at all. *See* Exhibit17; Exhibit 1, ¶ 95. The Mortgage Statement demonstrates that the entire principal balance due as of October 1, 2023 was $8,604.77. *See* Exhibit17. Spears' application was reviewed and was denied for ineligibility, because the mortgage was not delinquent by 30 days at the time of the application was submitted. *See* Exhibit 16, p. 1; Exhibit 1, ¶ 96. Spears was notified of this denial on June 27, 2024 via email and advised of her right to appeal the denial by completing an online Appeal Form. *See* Exhibit 16, p. 1; Exhibit 1, ¶ 97.    She did not appeal the denial or re-apply later had her mortgage become delinquent after October 19, 2023. *See* Exhibit 1, ¶ 97.

---

[5] The only applicant with the name of Andrea Spears in the HAF program system identified herself as Andrea Lynn Spears Kidwell. *See* Exhibit 9; Exhibit 1, ¶ 90.

Spears identified herself in her application as socially disadvantaged based on the following categories: member of a group that has been subjected to racial or ethnic prejudice, living in a persistent poverty county, and a resident of an Indian Reservation. *See* Exhibit 9, p. 4-5, Spears' Application.    Spears' Application was reviewed and processed in consideration of her attestation that she was socially disadvantaged as having been subjected to racial and ethnic prejudice and as a resident of an Indian Reservation[6]. *See* Exhibit 1, ¶s 98, 100.    Spears identified her race as "white" in her application. *See* Exhibit 9, p. 8; Exhibit 1, ¶ 99.    Spears alleges in the Amended Complaint that she is "white." *See* Amended Complaint ¶ 167.    Of course, the socially disadvantaged status was unnecessary for Spears' efforts to qualify, as she reported in her application an annual income of $1,598.00, which is far below 100% AMI. *See* Exhibit 9, p. 9-10.    Her AMI was 2.34% of the 100%AMI threshold for her county of residence, Tulsa County. *See* Exhibit 9, p. 9-10; Exhibit 1, ¶ 101.

Spears' address was 41 E. 51st Pl., Tulsa, OK ("Spears Address"). *See* Exhibit 9, p. 1.    The Mortgage on the Spears Address was granted on December 24, 2002 with the Andrea Spears, a single person, Catherine Spears and Andrew J. Spears, appearing as the borrower and mortgagor. *See* Exhibit 18, p. 1, Spears 2003 Mortgage.    Catherine Spears and Andrew Spears, despite being on the mortgage, were not identified as co-applicants by Spears. *See* Exhibit 9, p. 6.    This Mortgage was released on May 30, 2024, approximately

---

[6] OHFA disregarded her representation that she lived in a persistent poverty county because the residence was within Tulsa County, which is not by the census data considered a persistent poverty county. *See* Exhibit 1, ¶ 100.

six months after Spears' sought HAF program benefits. *See* Exhibit 19, Spears Release. A Quit Claim Deed for the Spears address was executed and filed with the Tulsa County Clerk on September 28, 2023, approximately 3 weeks prior to Spears' application being submitted to OHFA, which provided that "My mom was my cosigner 23 years ago, but I have made every payment on time since then, so she is wanting to remove herself from the deed." *See* Exhibit 20, Quit Claim Deed. The Spears' Mortgage was paid and full and released two months prior to her being advised of her denial of HAF benefits. Between the time of her application in October of 2023 and the denial in June of 2024, she had fully and completely paid off the Spears's Mortgage.

Spears provides no details as to the specifics of her mortgage needs, when such alleged forbearance was entered into, or any specific factual basis for her formulaic allegations that she was subjected to discrimination. Further, Spears was denied benefits because she did not meet the eligibility requirement that her mortgage, which was ultimately released as being paid in full, was not delinquent at the time of her application. Her claims fail to meet the jurisdictional requirements.

### E. Mark Bull initiated but did not complete the application process, despite claiming he had never heard about the HAF program.

Mr. Bull has alleged that he "never heard about the program." *See* Amended Complaint ¶ 162. He further alleged that he "was ready and able to apply for relief through" OHFA's HAF program. *See* Amended Complaint ¶ 164. Both such allegations are believed to be false. On September 14, 2022, a Mark Bull went through the process of creating a case and logged into the HAF program system and commenced the application

process having completed the Program Overview. *See* Exhibit 5, Bull Audit Log – Case ID 37917; Exhibit 1, ¶ 41, 106. If he entered any information into the application he did not save or submit any information as part of the application process, other than when he accessed the OHFA HAF system and completed the Program Overview. *See* Exhibit 1, ¶ 41, 107. In creating his case, Bull entered the following email address: mbullmail@gmail.com. *See* Exhibit 4, Bull Application; Exhibit 1, ¶ 41.

The allegations that he never heard about the program and was ready and able to apply appears patently false. Additionally, because Bull failed to bring his claim against Defendants within two years of the date of his having accessed the HAF system (September 14, 2022), his claims are barred by the statute of limitations. (See Section III. above).

### F. Lisa Dill, Eric Humphrey, and Deborah Griffin lack standing because they did not apply for benefits under the HAF program.

These three Plaintiffs each claim to have never heard about the program. The Court should look at such allegations as specious. A simple Google search of "Oklahoma Mortgage Assistance" has the HAF program landing page on OHFA website as the first result. *See* Exhibit 1, ¶ 21. Further, there is no plausible explanation in the Amended Complaint why or how the other five white Plaintiffs were able to become informed about the program or what affirmative steps Dill, Humphrey, and Griffin took to seek out assistance despite their allegation that they were "ready and able to apply for relief" had they "been informed about the program." *See* Amended Complaint, ¶s 137, 138, 150, 151, 190, and 191 Plaintiff Leuellen asserted in her first application that she heard about the program from a community organization and by "word of mouth" in her second

24

application. *See* Exhibit 7, p. 7; Exhibit 8, p. 7. Plaintiff Spears represented in her application that she heard about the program through "Website". *See* Exhibit 9, p. 7. Regardless, the foregoing demonstrates that the information was readily available for Oklahoma Citizens based on the marketing efforts of OHFA.

"A Plaintiff must allege personal injury fairly traceable to the Defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) (citing *Valley Forge Christian College*, 454 U.S. at 472). The elements of injury, causation, and redressability thus make up the constitutional component of standing. *Id.* These Plaintiffs cannot establish an injury-in-fact. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-71 (1972). In *Moose Lodge*, the court held a Black man lacked standing to challenge a club's race-based membership criteria if he didn't apply for membership. *Id.* Applied here, these Plaintiffs can only sue if OHFA injured them in a particularized way. Typically, a Plaintiff cannot establish standing for a discrimination claim challenging a program for which the Plaintiff failed to even apply. *See Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 468 (N.D. Tex., 2024) (citations omitted).

Routinely, courts have held that a plaintiff lacks standing to assert a claim when he or she has not formally challenged the basis for the claim. *See e.g., Albuquerque Indian Rights v. Lujan*, 289 U.S. App. D.C. 164, 930 F.2d 49, 56 (D.C. Cir. 1991); *Brown v. Sibley*, 650 F.2d 760, 770-71 (5th Cir. 1981). In *Madsen v. Boise State University*, 976 F.2d 1219 (9th Cir. 1992), the Court of Appeals for the Ninth Circuit held that a university student who had never actually applied for a free handicapped parking permit lacked standing to

25

bring an action based on handicap discrimination due to the university's not offering free handicapped parking permits. The *Masden* court held that the case fell into the long line of cases in which courts have held that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit. *See, e.g., Moose Lodge* at 407 U.S. 163, 166-71, (plaintiff who had never applied for membership lacked standing to challenge policies).

Similarly, the Plaintiffs Dill, Humphrey, and Griffin (and any others who purportedly didn't hear of the OK HAF Program) lack standing because they did not apply for benefits under the HAF program. Other than asserting without any specific, plausible basis that discriminatory marketing efforts impacted these three Plaintiffs, Plaintiffs Dill, Humphrey, and Griffin have failed to plead a plausible claim.

## VII. OHFA'S MARKETING OF THE HAF PROGRAM

OHFA marketed the HAF program through a variety of different avenues, which included verbal in-person presentations, distribution of paper flyers, announcements through media outlets, and posting information on the internet, including OHFA's website. *See* Exhibit 1, ¶ 108. Valenthia Doolin, OHFA's Homeownership Director, personally did media appearances on a radio station show called Sunday Morning Magazine with Margaret Steele which aired on cumulus stations throughout Oklahoma City. *See* Exhibit 1, ¶ 109. In-person presentations were made throughout the state including the following cities: Oklahoma City, Tulsa, Edmond, Norman, Moore, Yukon, Mustang, Owasso, Broken Arrow, El Reno, Shawnee, Purcell, Claremore, Coweta, Stillwater, Sallisaw, Muskogee, Ardmore, Noble, Newcastle, Bixby, Sand Springs, Sapulpa, Midwest City, Del

City, and Blanchard, as well as many other listed in the affidavit of Doolin. *See* Exhibit 1,

¶ 110. OHFA provided marketing materials and information about the OK HAF Program

to a number of different organizations that serve all races, including without limitation the

Oklahoma City Chamber of Commerce, Greater OKC Asian Chamber of Commerce,

Oklahoma Mortgage Bankers Association, Catholic Charities of Oklahoma City, Edmond

Board of Realtors, Tulsa Board of Realtors Education, Oklahoma Real Estate Commission

Education, Oklahoma HAF Registered Loan Servicers, and over 160 different real estate

offices throughout Oklahoma. *See* Exhibit 1, ¶ 111.

## VIII. PLAINTIFFS' AMENDED COMPLAINT FAILS TO ESTABLISH A PLAUSIBLE CLAIM AND DEFENDANTS ARE ENTITLED TO DISMISSAL UNDER RULE 12(b)(6)

As stated above, a Plaintiffs' pleaded facts must establish a claim that is plausible.

*Phillips v. Rogers*, 2022 U.S. Dist. LEXIS 96969, *3; (W.D. Okla. 2022). Conclusory

allegations without supporting facts are insufficient to state a claim upon which relief can

be based. *Id.* OHFA has shown herein, that Plaintiffs' claims must be dismissed as a matter

of law due to Plaintiffs' lack of standing and/or statute of limitations preclusion. Because

Plaintiffs' allegations fail as a matter of law, they have not established claims that are

plausible.

Additionally, Plaintiffs incorrectly state that OHFA is "an agency of the state." *See*

Amended Complaint [Dkt 28], ¶ 24. As the Oklahoma Attorney General has recently noted

with respect to OHFA, the provisions of title 60, section 176.1(A) provide that state

beneficiary public trusts (like OHFA) are presumed "to exist as a legal entity separate and

distinct from" the State. 2023 OK AG 13, ¶18, *citing* Okla. Stat. tit. 60, § 176.1(A)(2).

The Attorney General concluded by opining: "Therefore, OHFA does not fall within the definition of 'state agency' or 'agency.'" 2023 OK AG 13, ¶21 [emphasis supplied].

Moreover, in this case it is beyond dispute that OHFA acted to administer the federal HAF program created by ARPA and federally administered by the U.S. Treasury. Plaintiffs make no allegation *at all* that either OHFA or the individual defendants acted "under color of state law," which is an essential element of a claim under 42 U.S.C. Section 1983.[7] Plaintiffs have failed to state a Section 1983 claim. Therefore, for this and for all the reasons stated herein, Plaintiffs' First Amended Complaint should also be dismissed for failure to state a claim.

## IX. **THE OFFICIAL CAPACITY CLAIMS ARE REDUNDANT AND UNNECESSARY**

In addition to OHFA, the Plaintiffs have named as Defendants each OHFA Trustee; OHFA's Executive Director; OHFA's Deputy Director/CFO; and OHFA's Homeownership Director in their official capacities (Dkt. 28 ¶ 25-32). "An action against a person in his official capacity is, in reality, an action against the entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). See *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 at 690 n.55 (1978) ("[O]fficial

---

[7] By its terms, 42 U.S.C. Section 1983 states:

Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory* or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured in an action at law, suit in equity…*

capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). A § 1983 claim therefore lies against either an entity or its officers in their official capacity — not against both the entity and the officers in their official capacity. See *Vondrak v. City of Las Cruces*, 2009 U.S. Dist. LEXIS 134519, at *1-2 n.1. (D.N.M. 2009) For this reason, courts routinely dismiss official-capacity claims against officials as redundant with claims against the entity itself. See, e.g., *Stewart v. City of Prairie Village, Kansas.*, 904 F. Supp. 2d 1143, 1161 (D. Kan. 2012); *Stout v. United States ex rel. United States Marshal's Serv.*, 2013 U.S. Dist. LEXIS 157517, at *5-6 (W.D. Okla. 2013); *Doe v. Douglas Cnty. Sch.*, Dist. RE-1, 775 F. Supp. 1414, 1416 (D. Colo. 1991).

In *Vondrak* the Court granted a motion to dismiss official-capacity claims asserted against police officers, because the plaintiff also named the municipality in its official capacity. *See Vondrak,* 2009 U.S. Dist. LEXIS 134519. The Court explained that "[s]uch claims are redundant, and one or the other suffices." *Id.*, at *2 n.1. The Court added that, although "redundancy in pleadings may be harmless," Rule 12(f) of the Federal Rules of Civil Procedure specifically authorizes courts — either upon motion, or *sua sponte* — to eliminate redundant material in pleadings. *Id.*, at *2 n.1 (*citing* Fed. R. Civ. P. 12(f)). The Court concluded that "[t]here is no sound reason to allow plaintiffs to eliminate redundant material in the pleadings but not defendants." *Vondrak*, at *2 n.1.

Here, the Plaintiffs' official capacity claims against the individual Defendants are, in reality, an action against OHFA, the entity for whom these individuals either serve as trustees or as employees. Consequently, Plaintiffs' official capacity claims against these

individuals are redundant with the claims against OHFA, and "one or the other suffices".

*Vondrak,* at *2 n.1. Therefore, the Court should dismiss the official capacity Defendants,

as these claims are redundant with the claims against OHFA.

## X. **PLAINTIFFS' FAIL TO STATE A PLAUSIBLE RULE 23 CLAIM**

Plaintiffs have failed to state a plausible claim for class certification.  In the case at

bar, adjudication of each Named Plaintiffs' individual claim and of the individual claims

of the putative class members (if it could be determined who the members of the putative

class are) will necessarily depend on discrete factual scenarios.  The proposed class

members' claims against OHFA allegedly arise from separate incidents or transactions,

including the facts and circumstances of their respective COVID-19 related event, their

individual application, individual reasons for denial, individual financial circumstances by

which they sought to avail themselves of the HAF program, and the nature and extent of

their damages, all of which make Plaintiffs' request for class certification impracticable.

Given the unavoidable factual disparities that will necessarily impact the success or failure

of each Named Plaintiffs' claim, the Named Plaintiffs will not adequately represent the

potentially hundreds of diverse factual situations that are relevant to each putative class

member's claim.   Such individualized inquires would essentially require mini-trials.

*Harrell v. Ckeckagain, LLC,* 248 F.R.D. 199 (S.D. Miss. 2006).

Pursuant to Rule 23, Plaintiffs must establish that the questions of law or fact which

are common to the class members "predominate over any questions affecting only

individual members" and the superiority of a class action over other methods for fair and

efficient adjudication.  Rule 23(b)(3).  Given the unavoidable factual disparities that will

necessarily impact the success or failure of each Named Plaintiffs' claims, they (Named Plaintiffs will not adequately represent the diverse factual situations that are relevant to each putative class member's claim). A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation. *Thompson v. Jiffy Lube International, Inc.* 250 F.R.D. 607, 623 (D.Kan. 2008); *Beck v. Maximus, Inc.*, 457 F.3d 291 (3rd Cir. 2006).

In order to be considered for certification, a proposed class must meet certain threshold requirements that a defined or identifiable class exists and that the class representatives are members of the class. *Pueblo of Zuni v. United States,* 243 F.R.D. 436, 493 (D.N.M. 2007), for a class cannot be certified where its definition is so indefinite as to prevent a court from eventually determining whether each putative class action participant is a proper member. *Hockenburg v. Hanover Inc. Co.* 2016 U.S. Dist. Lexis 16159 *10 (W.D. Okla. 2016). *See Agne v. Papa John's Int'l, Inc.* 286 F.R.D. 559, 556 (W.D. Wash. 2012) ("A class definition should be 'precise, objective and presently ascertainable.' (citation omitted) While the identity of each class member need not be known at the time of certification, the class definition must be 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'").

Plaintiff proposes the following class definition, consisting of subparts (a) and (b):

a. All Oklahoma homeowners who applied for assistance under OHFA's Oklahoma Homeowners Assistance Fund program, who are white, Asian, or pacific Islander who were otherwise eligible for funds under the program but did not meet OHFA's definition of socially disadvantages individual, and who had their applications denied or delayed in processing by OHFA because of OHFA's race-based prioritizing of applications.

31

   b. All Oklahoma homeowners who are white, Asian, or Pacific Islander who were otherwise eligible for funds under OHFA's Oklahoma Homeowner Assistance Fund program but did not meet OHFA's definition of social disadvantaged individual, and who never learned about the program because of OHFA's race-based marketing and outreach.

*See* Amended Complaint [Dkt. 28], ¶193.

None of the named Plaintiffs' who applied are representative of such a purported class. Furthermore, the proposed class definition fails the precise and ascertainable test addressed above, and the definition when applied to the named Plaintiffs would include individuals against whom OHFA would have done no legal wrong whatsoever. Nowhere in Plaintiff's Amended Complaint do they plausibly allege how their applications were denied or delayed due to race-based prioritizing and that their claims are plausibly representative of such a class or subclass. To the contrary, those Plaintiffs who did apply had their applications denied due to race-neutral nondiscriminatory reasons as explained above. *See Wilson v. Glenwood International Props., Inc.,* 98 F. 3d 590, 594 (10th Cir 1996) ("Discrimination cannot be the cause of the injury to an applicant who could not have obtained the benefit even in the absence of discrimination.").

This proposed class definition subpart (b) essentially includes all those who never learned about the program because of race-based marketing and outreach. A class of Oklahoma residents "who never learned about the program" would be difficult if not impossible to ascertain. *See Downs v. Robinson Hoover and Fudge, PLLC,*. 2024 U.S. Dist. LEXIS 177118, *13 ("Such a definition brings problems with ascertaining class membership, which 'militate against a finding that class treatment is appropriate . . .'").

Because the Named Plaintiffs and the putative class seek compensatory damages, OHFA is entitled to a jury determination of its liability, the nature and extent of the harm proven, and other individual circumstances of each putative class member, including the amount of fair compensation for cognizable injuries. U.S. Constitution, Amendment 7; and Oklahoma Constitution Article II, §19. When plaintiffs seek monetary relief, a class is appropriate under Rule 23 only in the limited circumstances when the damages can be calculated "using objective standards cannot depend on individual subjective differences in each class member's circumstances." *Riley v. Compucom Sys, Inc.*, 2000 U.S. Dist. LEXIS 4096 (N.D. Tex. 2000). "[C]ompensatory damages are an individual remedy, rather than class-wide remedy that can be calculated using objective standards . . . [and] are not incidental to the class-wide injunctive or declaratory relief normally sought in a Rule 23(b)(2) class action." *Id.* "As a matter of law, entitlement to compensatory damages cannot be presumed from a constitutional or statutory violation." *Riley* at *13, *citing Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 416-417 (5th Cir. 1998). Plaintiffs have failed to plead beyond using the vague term "compensatory damages" the objective contours of the Named Plaintiffs' compensatory damages or how the compensatory damages of the putative class would be determined by any standard, let alone an objective one. Seemingly, calculating compensatory damages for each Named Plaintiff and each putative class member would require individualized inquiries, not the application of objective standards.

The Amended Complaint states that "Class members are seeking damages from OHFA under Title VI for unlawful discrimination in the development, marketing, and

33

administration" of the HAF program.  With regard to the Named Plaintiffs' marketing allegation (class definition subclass (b)), which according to the class definition above would be its own, separate marketing class, Rule 23 provides that if individual notice to all members cannot be accomplished because the entirety of the class membership cannot be identified through reasonable effort, the court shall direct to the members of the class the best notice practicable under the circumstances.  Rule 23(c)(2)(B).  In the case at bar, the Court would not be able to give individual notice to all or even most of the putative marketing class members, due to the fact that the proposed marketing class are persons "who never learned about the program."  The purported class as identified fails to show how a list of individuals could be assembled for purposes of providing notice.  Even if some general notification were justified, the Court would not be able to fashion an effective or efficient notice that could be published in news media, online, or on billboards.  For example, the Court will not ask that notice be given to the public that states something to the effect of "Attention:  all Oklahoma homeowners who were discriminated against by OHFA and who never learned about the program and were wronged by OHFA."  Such a notification would seemingly be against public policy by encouraging purported class members to li about never having heard about the HAF program.  Further, such a notice to the purported marketing class would be neither helpful nor efficient in providing notice of class-certification as required by Rule 23.

The Named Plaintiffs would need to prove there is a way to aggregate and manage efficiently their fragmented claims not to mention the likely case-specific claims of the putative class members on a classwide basis.  Class-certification in the instant action would

34

require the Court to evaluate each class member's own conduct in not hearing about the program, not providing individual program required information, the conduct of OHFA with regard to each particular individual, causation of the harm claimed by each individual, the nature and extent of the harm suffered (even if actionable), and the amount of monetary damages that would comprise fair compensation for the alleged harm suffered by each individual. Such a process would quickly degenerate in practice into multiple lawsuits separately tried. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998).

Further, OHFA's liability, if any, for damages is not capable of classwide resolution and cannot be resolved in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). If an effort to address damages in a classwide manner would result in some members being undercompensated and others receiving a windfall, certifying a class would run afoul of OHFA's right to trial by jury. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013). A defendant's right to jury trial is violated where the jury must determine classwide liability on damages based on extrapolation. *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998). Further class wide resolution is not permitted where aggregate damages would be based on an "abstract analysis of averages." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 3331 (4th Cir. 1998).

## XI. CONCLUSION

Plaintiffs have failed to establish standing or to otherwise state a plausible claim, and for all the reasons set forth above and in the Doolin Declaration, Defendants respectfully request that the Amended Complaint be dismissed with prejudice in its entirety against Defendants.

35

Respectfully submitted


s/ *Kristopher E. Koepsel*
Kristopher E. Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen,
    Orbison & Lewis, P.C.
502 West Sixth Street
Tulsa, OK  74119-1010
(918) 587-3161 phone
(918) 587-9708 fax
kkoepsel@riggsabney.com

Robert A. Nance, OBA #6581
Melvin C. Hall, OBA #3728
Riggs, Abney, Neal, Turpen,
    Orbison & Lewis, P.C.
528 N.W. 12th Street
Oklahoma City, OK 73103-2407
405-843-9909 phone
405-842-2913502 fax
mhall@riggsabney.com
rnance@riggsabney.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of March, 2025, a true and correct copy of the foregoing was electronically filed via the Court's electronic filing system which will serve notice of same to all counsel of record.


s/ *Kristopher E. Koepsel*


36