IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELAINE WILKINSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-24-1229-PRW |
| ) | |
| OKLAHOMA HOUSING FINANCE ) | |
| AGENCY, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 41).[1] This matter is fully briefed and ripe for judgment. For the reasons that follow, the Court **DENIES** the Motion (Dkt. 41) and **DENIES AS MOOT** Plaintiff's Motion for Leave to Seek Jurisdictional Discovery (Dkt. 46).

### *Background[2]*

This case arises from alleged racial discrimination in government mortgage assistance payments. In 2021, Congress passed the American Rescue Plan Act ("ARPA"), which, as pertinent to this case, created the Homeowner Assistance Fund. The United

---

[1] Defendants include in their Rule 12 motion a request that the Court decline to certify a class pursuant to Rule 23. Such a request should be made in a separate motion, *see* LCvR7.1(c), so the Court will not address it here.

[2] Unless otherwise noted, the facts presented in this section are undisputed.

1

States Department of the Treasury administered the fund and allocated more than $87,000,000 to the State of Oklahoma, via the Oklahoma Housing Finance Agency. ARPA required that at least 60% of the allocated funds were first prioritized to assist homeowners who had the greater of "incomes equal to or less than 100 percent of the area median income for their household size or equal to or less than 100 percent of the median income for the United States[.]"[3] Then, Congress directed administrators to prioritize allocating the remaining funds to undefined "socially disadvantaged individuals."[4] The Treasury Department later issued non-binding guidance that stated that there was a "rebuttable presumption" that socially disadvantaged individuals included black, Hispanic, Native, and Asian Americans and Pacific Islanders.[5] When Oklahoma implemented its version of the Homeowner Assistance Fund, it mostly adopted the Treasury Department's definition of "socially disadvantage individuals."[6]

Plaintiffs, a group of white Oklahoma homeowners, allege that because of this, they were "deprived of the opportunity to learn about the program and apply for assistance, were deterred from applying for assistance, or were denied assistance after applying because of their race."[7]

---

[3] 15 U.S.C. § 9058d(c)(2).

[4] *Id.*

[5] U.S. Dep't of the Treasury, *Homeowner Assistance Fund Guidance* at 2 (Apr. 14, 2021), https://perma.cc/LX4H-DGZ5 (last visited Nov. 5, 2025).

[6] Dec. Valenthia Doolin (Dkt. 41, Ex. 1), ¶14.

[7] Amended Compl. (Dkt.28), at 25.

2

Plaintiffs seek class certification and compensatory damages under Title VI, nominal damages under Title VI and § 1983, injunctive relief under Title VI and the Equal Protection Clause, attorney fees and costs pursuant to 42 U.S.C. § 1988, and a declaration that Defendants violated Title VI and the Equal Protection Clause. Defendants now move to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

*Analysis*

I.   **Plaintiffs have stated a claim upon which relief can be granted.**

   a.   **Plaintiffs have stated a claim for Equal Protection and Title VI violations.**

To state a claim for a violation of Title VI, Plaintiffs must show "(1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance."[8] Further, Title VI and the Equal Protection Clause are generally in lockstep—a violation of one is sufficient to demonstrate a violation of the other, if the institution in question accepts federal funding.[9] When the government disburses benefits on the basis of race, strict scrutiny is triggered and the government must demonstrate a compelling reason for using racial classifications.[10] This is quintessentially a merits question.

---

[8] *Baker v. Board of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993) (citing *Jackson v. Conway,* 476 F.Supp. 896, 903 (E.D.Mo.1979), *aff'd,* 620 F.2d 680 (8th Cir.1980)).

[9] *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 198, n. 2 (2023) (citing *Gratz v. Bollinger*, 539 U.S. 244, 276, n. 23 (2003)).

[10] *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 720 (2007) (collecting cases).

As a threshold matter, Plaintiffs allege that they were treated differently by the Oklahoma Housing Finance Agency and government officials based on their race. They have provided the Court evidence that OHFA considered potential applicants' "socially disadvantaged" status—a proxy for race, they allege—as a basis for eligibility.[11] Plaintiffs have also provided evidence that Oklahoma was not required to use racial classifications to administer ARPA funds, as they allege that Texas and California used race-neutral criteria hinged upon socioeconomic status.[12] Defendants admit that they "essentially adopted" the Treasure Department's "socially disadvantaged" definition, which included race-based classifications.[13] In short, Plaintiffs allege that OHFA publicly declared that homeowners of a certain race would be subject to laxer requirements for mortgage assistance than homeowners of other races and that their inability to receive assistance was in part due to their disfavored race. Those allegations sufficiently state a claim upon which this Court can grant relief.[14] To the extent that Defendants argue they were just following federal law, the Equal Protection Clause does not provide states any "they told me to" safe harbor.

---

[11] Amended Compl. (Dkt. 28), at ¶58.

[12] *Id.* at ¶228–29.

[13] Mot. Dismiss (Dkt. 41), at 8.

[14] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### b. Defendant OHFA is a state actor for purposes of Section 1983.

Citing an advisory opinion from the Oklahoma Attorney General, Defendants make a cursory argument that OHFA, as a public trust, is not a state actor.[15] But advisory opinions from the Attorney General have no binding effect upon federal courts, as evidenced by the Tenth Circuit having held that public trusts created pursuant to 60 O.S. § 176, *et seq.*, are state actors.[16] In line with that decision, this Court concludes that OHFA is a state actor that can be sued in a § 1983 action.

### c. The Court will not dismiss the claims against Defendants in their official capacities.

Defendants also urge the Court to dismiss the OHFA officers who have been sued in their official capacities, alleging that naming them is redundant. While the Court has allowed suit to proceed against OHFA, it is too soon to say whether there is any redundancy in the naming of the OHFA officers. The Court thus declines to dismiss those officers at this stage.

## II. Defendants' factual attacks on Plaintiffs' claimed Article III injuries are premature.

Arguing that Plaintiffs have not suffered an Article III injury, Defendants attach nearly 300 pages of exhibits to their Motion to Dismiss in an effort to prove as much. For a variety of particularized reasons, Defendants argue that no named Plaintiff faces concrete and imminent harm. At this stage, the Court will not detail the arguments as to every

---

[15] Mot. Dismiss (Dkt. 41), at 27.
[16] *Beedle v. Wilson*, 422 F.3d 1059, 1065 (10th Cir. 2005).

Plaintiff. Defendants have simply jumped the gun, as their Motion to Dismiss requires the Court to determine disputed questions of fact in Defendants' favor in order to say Plaintiffs lack Article III standing.

Plaintiffs dispute Defendants' factual attacks on their ability to demonstrate Article III injuries. Take Plaintiff Laurie Leuellen, whom Defendants claim wasn't injured when she was denied mortgage assistance because she failed to provide the information necessary to complete her application for assistance. As part of their evidence, Defendants included an audit log related to her online application, but only 201 of 657 entries appear to be displayed.[17] Further, Plaintiffs point out that after the filing of this lawsuit, changes were made to the audit log captured in this Exhibit.[18] This demonstrates why discovery is necessary, as it is unclear at this point what information is missing and how that bears on Plaintiffs' claims. Even so, Plaintiffs argue that this Exhibit shows that for two years, OHFA "slow-rolled Leuellen's application, sent her conflicting information and shifting deadlines, and ultimately put her in a situation where her house was nearly foreclosed upon."[19] These present legitimate fact questions—i.e., was Leuellen's application "slow-rolled" as a result of her race? Were applicants of favored races provided more assistance and grace in the application process? What the Court does know at this point is that Leuellen was denied mortgage assistance, OHFA adopted a system that incorporated race-based classifications into its eligibility requirements, and Leuellen has raised the specter

---

[17] Leuellen Audit Log (Dkt. 41, Ex. 15), at 2.
[18] Resp. (Dkt. 44), at 17.
[19] *Id.*

that OHFA treated her application process differently because of race. Construing Plaintiffs' facts in the light most favorable to them, Plaintiff Leuellen has demonstrated that she has properly alleged an Article III injury to establish standing.

Similar to Leuellen, Plaintiffs Cameron and Monica Young, Andrea Spears, and Elaine Wilkinson were all denied mortgage assistance. While Defendants claim that the Youngs were "not denied for any discriminatory reason[,]" the Court cannot decide the Motion on Defendants' representation.[20] Defendants claim that there was no discrimination because the Youngs' "application was reviewed quickly and in the order it was submitted without regard for socially disadvantaged status."[21] But the Exhibit Defendants rely on for this representation doesn't prove as much.[22] Whether an application was reviewed quickly and treated fairly is a relative question in this case, and a solitary log as to these Plaintiffs does not give the Court the necessary context. Further, while Defendants claim that the Youngs were denied because their mortgage was not delinquent, Plaintiffs point out that Defendants' declarant, in her deposition, stated applicants were eligible for assistance if they were "30 days delinquent at the time of their application, in a forbearance plan, or entering or completed a loan modification, including a partial claim or deferral mortgage amount, to mitigate the COVID-related delinquency."[23] Despite that, Defendants claim that after they submitted their application, the Youngs informed OHFA that they had agreed to

---

[20] Mot. Dismiss (Dkt. 41), at 16.

[21] *Id.*

[22] *See* Young Audit Log (Dkt. 41, Ex. 11).

[23] Decl. Valenthia Doolin (Dkt. 41, Ex. 1) ¶7.

7

defer payment on their mortgage with their servicer, thereby making their loan no longer delinquent and that is why they were denied. So, which is it? Defendants have provided the Court with dueling representations as to the Youngs' eligibility for mortgage assistance, and such inconsistency makes granting the Motion impossible. The Youngs have alleged facts sufficient to demonstrate an injury at this stage.

As to Plaintiff Spears, Defendants claim she was denied relief because her mortgage was paid up at the time OHFA denied her application. Plaintiffs claim that Spears had been forced into forbearance when she applied for assistance, which as previously stated would mean she was eligible for assistance.[24] There is a legitimate dispute between the parties as to Spears's eligibility for assistance here and whether her inability to receive assistance *at the time she applied* was a result of her race. Defendants are not saved because Spears's mortgage was released by the time they finally moved on her application.

As to Plaintiff Wilkinson, Defendants argue that Wilkinson suffered no injury because she did not complete her application, but that misunderstands Plaintiffs' complaints. Even if Wilkinson failed to complete her application, Plaintiffs allege that OHFA helped applicants of preferred races complete their applications in ways other applicants were not.[25] Accordingly, failure to complete an application does not mean that Wilkinson did not suffer an injury when considering the facts alleged by Plaintiffs.

---

[24] *Id.*

[25] Amended Complaint, (Dkt. 28), ¶67.

Finally, a handful of Plaintiffs claim they were injured because OHFA "erected a barrier that denied them equal treatment" based on the outreach and marketing efforts by OHFA that targeted potential applicants of favored races.[26] Defendants counter by arguing that there was no injury to these plaintiffs because they did not apply for assistance and because certain Google searches would have shown Plaintiffs that mortgage assistance was available. Additionally, Defendants attempt to downplay these claims by pointing out that other Plaintiffs in this case who applied are white. Again, the question before the Court is relative—not whether any applicants of disfavored races applied for assistance, but whether there was unlawful discrimination in the advertisement of the program. Discovery will be necessary to resolve questions about the extent of OHFA's marketing and outreach efforts to determine if they were unconstitutionally targeted to people of specific races.

The Court finds that significant questions of fact exist that are inappropriate for resolution at this stage of the case. Accordingly, the Court must convert this to a Rule 56 motion for summary judgment.[27] Because discovery has not occurred yet, the Court must dismiss this premature motion for summary judgment.

*Conclusion*

Accordingly, the Court converts Defendants' Motion to Dismiss (Dkt. 41), to the extent it is a motion under Rule 12(b)(1), to a motion for summary judgment and **DENIES** it **WITHOUT PREJUDICE** as premature. Defendants may bring these arguments at the

---

[26] Resp. (Dkt. 44), at 20.

[27] *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (abrogated on other ground by *Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001)) (internal citations omitted).

summary judgment stage. The Court further **DISMISSES** Defendants' Motion to the extent that it argues that Plaintiffs cannot state a claim under Rule 12(b)(6). The Court also **DENIES AS MOOT** Plaintiffs' Motion for Leave to Seek Jurisdictional Discovery (Dkt. 46).

    **IT IS SO ORDERED** this 4th day of December 2025.

                                                                                           PATRICK R. WYRICK
                                                                                           UNITED STATES DISTRICT JUDGE